UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE KERNAN, ) | |
| ) | Civil Action No._____ |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge |
| COMPUTER TASK GROUP INC., and ) | |
| MICHAEL McNEES, an individual ) | Magistrate Judge |
| ) | |
| Defendants ) | **Electronically Filed** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

I. Jurisdiction and Venue

1. This is a civil action under Title VII of the Civil Rights Act of l964, as amended (Title VII), 42 U.S.C. § 2000e *et seq*., the Equal Pay Act of 1963, as amended (EPA), 29 U.S.C. § 206(d), the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. § 621, *et seq*, and the Pennsylvania Human Relations Act, as amended, (PHRA), Act of 1955, P.L. 744, 43 P.S. § 951 et seq., specifically 43 P.S. §§ 955(a)(d) and (e), which prohibit discrimination against any individual, respectively, by employers, and by persons, because of the individual's sex, age, and/or in retaliation for opposing any practices made unlawful under the statutes, to correct unlawful employment practices, and to make whole the Plaintiff, Leslie Kernan.

2. Original federal question jurisdiction over this private suit to enforce civil rights is conferred on this court by 28 U.S.C. §§1331; supplemental jurisdiction over the state law claims is authorized by 28 U.S.C. §1367. The unlawful employment practices primarily occurred in

and around the City of Pittsburgh, in Allegheny County, Pennsylvania, where Plaintiff resides and works, and where the damaging effects of the unlawful conduct occurred; venue is properly laid in the U.S. District Court for the Western District of Pennsylvania under 42 U.S.C. §. 2000e-5(f)(3).

## II.  Parties

3. Plaintiff, Leslie Kernan ("Plaintiff" or "Ms. Kernan"), resides in Pittsburgh, Pennsylvania, and is a woman born in 1956, employed as a sales representative with Computer Task Group Inc. (CTG).

4. Defendant Computer Task Group Inc. (CTG), is a New York corporation, having its principal office in Buffalo, New York, and offices nationwide including one in Pittsburgh, PA.  At all times relevant to this suit, CTG has been engaged in interstate commerce and has employed more than 15 people.

5. Individual Defendant Michael McNees (McNees) who resides in Annapolis, Maryland, and traveled to Pennsylvania for business and pleasure on a regular basis, had direct managerial or supervisory control over the terms and conditions of Plaintiff's employment, until he was separated from employment with CTG effective July 7, 2006.

6. At all relevant times, CTG has continuously been an employer within the meaning of 42 U.S.C.§ 2000e(a)and (b), and McNees is a person as defined by 43 P.S. § 954.

### III. Claims

7. All administrative exhaustion prerequisites to filing suit have been satisfied. More than 180 days prior to the filing of this lawsuit, on October 21, 2005, Plaintiff filed a sworn written Charge with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC), in which she alleged that Defendants had violated Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Equal Pay Act, and the Pennsylvania Human Relations Act, principally in that during the operative time periods under each statute and continuously to the present, the corporate defendant and the individual defendant (a) engaged in a pattern or practice of subjecting Plaintiff and other women to unequal pay, (b) subjected Plaintiff to disparate treatment with regard to the terms and conditions of employment, (c) maintained a "glass ceiling" which systematically denied women equal promotional opportunities and promotions, and (d) engaged in unlawful retaliatory conduct after Plaintiff complained about the discrimination, which caused her to suffer pecuniary and nonpecuniary damages.

8. Ms. Kernan was treated less favorably than her similarly-situated comparators in the terms and conditions of her employment, since on or about April 1999, and continuously to the present. Such discriminatory and retaliatory treatment included, by way of illustration and not limitation:

    A) systematically compensating her and other women at a lower rate than their male peers for equivalent work;

    B) systematically compensating her and other women at a lower rate than their male peers on the basis of sex;

C) systematically denying to qualified women, equal opportunities for promotions and advancement;

D) systematically denying to qualified women, promotions and advancement;

E) interfering with her work and preventing her from performing the usual functions of a sales representative in comparison with her male peers by, for example, instructing her not to communicate with or visit accounts that were nominally assigned to her;

F) refusing her request for an increase in her base compensation and then increasing her quota, and requiring Plaintiff alone to pay CTG up to 50% of her commissions for support services which were provided to other sales representatives without charge, even after the support services were no longer being provided;

G) refusing to promote her to sales manager, promoting males to sales manager and Director status noncompetitively, and failing and refusing to award her the Director or the Senior Account Representative titles and benefits;

H) presenting her with a disciplinary notice on September 21, 2005, when she was at 110% of her sales quota, falsely accusing her of unsatisfactory performance and instituting a performance improvement plan ("PIP"), which imposed on her, brand new, unattainable, illogical and discriminatory performance standards unrelated to any legitimate business requirement, to be achieved within thirty days, subject to termination;

I) engaging in abusive tactics including but not limited to maliciously berating Ms. Kernan in front of others, giving Plaintiff work assignments and directives having no purpose except to

waste Ms. Kernan's time, consistently failing to keep, and/or appearing inordinately late for scheduled appointments with Ms. Kernan without notice, in order to prevent Ms. Kernan from performing the essential function of her sales job (i.e. to sell CTG services), and deliberately to humiliate and degrade Ms. Kernan;

J) presenting her with another disciplinary notice on April 12, 2006, which contained false allegations of unsatisfactory performance and a PIP, which imposed on her, brand new, unattainable, illogical and discriminatory performance standards unrelated to any legitimate business necessity, within thirty days, subject to termination;

K) withholding from her, recruitment services necessary to secure qualified candidates to fill posted positions with her customers;

L) failing to pay recruiters who performed recruitment services for her accounts;

M) directing her to violate her customer's policy with regard to communications with its management personnel;

N) manipulating the measure of her sales performance and the identification or designation of compensable sales, altering the manner of crediting her sales, denying Ms. Kernan credit for her work, and manipulating and removing accounts from Ms. Kernan

O) giving conflicting directives and reprimanding her for following her supervisors' orders;

P) falsely accusing Ms. Kernan of culpability for a customer complaint by Roxane Labs, after Rob Dice, the project manager and Director of Delivery, had already admitted it was his fault, and

directing Ms. Kernan to remedy the complaint while simultaneously withholding from Plaintiff, and directing others to withhold from Plaintiff, the information necessary for her to do so;

Q) withholding supervisory authorization and account and contact information necessary to her work;

R) restricting her communications with her customers;

S) restricting her travel to her customers outside of Pittsburgh;

T) restricting her travel to attend sales conferences, most recently at the Interfex conference at the Javits Center in New York City in March 2006;

U) criticizing her for not opening new accounts while directing her to work only on three existing accounts, and, on April 6, 2006, expressly directing her not to pursue sales with "Metrics," a new account lead;

V) manipulating and withholding her pay;

W) by McNees engaging in overtly discriminatory conduct in making remarks indicating discriminatory animus against women, which were either directed to Ms. Kernan or made in her presence, including those reflecting his belief that the proper role of women in the workplace was being inferior and/or subservient to men, and consistently inviting business associates to a local bar with bikini- or scantily-clad female staff, modeled after the Hooters restaurant chains, "Hi-Tops" and consistently referring to it as "Big Tops" in reference to the staff members' breasts, making inappropriate sexual comments and/or propositioning other female employees including, for

example, Sherry Ferris;

X) Forbidding her to participate in a scheduled conference call with her primary customer, and forbidding her to contact any other customers until and unless she withdrew her charge of discrimination, and,

Y) Transferring her back and forth between the LSS and SSS divisions and threatening to force her to continue to report to LeCount and McNees until and unless she withdrew her charge of discrimination.

9. Ms. Kernan was made to suffer disparate treatment, adverse employment actions, a hostile work environment, and unlawful retaliation, because of her sex, age, and in retaliation for engaging in protected activity, including opposing McNees' discriminatory conduct, and supporting her coworkers' complaints of violations of Title VII.

10. Ms. Kernan complained about the discrimination and retaliation against her, to McNees, to Resources Director Stan Hamlin, and to other CTG management officials. CTG's failure and refusal to correct or eliminate the discriminatory practices has deprived Plaintiff of equal employment opportunities, and has otherwise discriminated against her because of her sex, age and in retaliation for having opposed practices made unlawful by Title VII, the EPA, the ADEA, and the PHRA, which has adversely affected her professional status, and has caused plaintiff to suffer economic losses including lost wages and benefits, as well as future pecuniary losses, interest, reasonable attorney's fees and costs, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

11. McNees acted in concert with CTG to perpetuate the discriminatory treatment of Plaintiff,

authorized or ratified discriminatory acts by and/or through Tony LeCount and Stan Hamlin, and/or failed and/or refused to take prompt or effective remedial action to eliminate the unlawful practices of which Plaintiff complained, thereby aiding and abetting CTG in its violation of Plaintiff's right to be free of discrimination and other unlawful employment practices, in the terms and conditions, benefits, rights, and privileges of her employment.

12. McNees was notified by Plaintiff and/or others at CTG that Plaintiff believed, in good faith, that she was being subjected to illegal discrimination and retaliation; thereafter, and as a result, McNees unlawfully retaliated against the Plaintiff, and subjected her to materially adverse conditions of employment.

13. McNees unlawfully aided and abetted CTG in the discrimination and retaliation against the Plaintiff, by ratifying, and actively assisting the corporate defendant in committing, the discrimination that they knew was occurring, and by failing to take prompt effective remedial action to stop such unlawful conduct and to prevent continuing and future occurrences of discrimination against the Plaintiff, after being notified by Plaintiff that she believed, in good faith that she was being subjected to illegal discrimination and retaliation.

14. On July 3, 2006, Plaintiff received a Notice of Right to Sue (NRTS) dated June 29, 2006 from the U.S. Equal Employment Opportunity Commission; this action is commenced within ninety days of Plaintiff's receipt of the NRTS, a copy of which is attached hereto as Exhibit A.

## IV. COUNT ONE: TITLE VII, EPA, ADEA, and PHRA

## Kernan v. CTG

15. Paragraphs 1-14 are incorporated herein by reference as though set forth in their entirety.

16. Since at least on or about April, 1999 and continuing to the present time, Defendant CTG has knowingly, intentionally, and willfully engaged in unlawful employment practices in and around the Pittsburgh Metropolitan Area in violation of 42 U.S.C. § 2000e-2(a) & § 2000e-3(a), 29 U.S.C. § 206(d), 29 U.S.C. § 623(a) &(d), and 43 P.S. § 955(a)(d) and (e).

17. The effect of CTG's failure and/or refusal to treat Plaintiff equally with her comparators in the terms and conditions of his employment has been to deprive Plaintiff of equal employment opportunities and otherwise to adversely affect her status because of her sex, age, and in retaliation for having opposed the discriminatory practices of Defendant, and to cause her to suffer pecuniary and non-pecuniary harm and losses, in violation of Title VII, the EPA, the ADEA, and the PHRA.

## V. COUNT TWO: PHRA

## KERNAN v. McNEES

18. Paragraphs 1-17 are incorporated herein by reference as though set forth in their entirety.

19. Since at least on or about January 1, 2003 and continuing thereafter to the present time, Defendant McNees has knowingly, intentionally, and willfully engaged in unlawful employment practices in and around the Pittsburgh Metropolitan Area in violation of 43 P.S. § 955(d) and (e).

20. The effect of McNees' unlawful acts and failures to act, to end the discrimination against Plaintiff through his ratification of, or failure to correct, such discrimination, has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her status because of her sex, age, and in retaliation for having opposed the discriminatory practices of McNees and CTG, and to cause her to suffer pecuniary and non-pecuniary losses in violation of the PHRA.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A) Grant a permanent injunction enjoining Defendants, their officers, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, practices which discriminate and/or retaliate in violation of Title VII, the EPA, the ADEA, and the PHRA;

B) Order CTG to institute and implement, and McNees to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities for women, individuals over age forty, and those who have opposed practices made unlawful by Title VII and the PHRA;

C) Order Defendants to make whole Leslie Kernan by providing appropriate back pay with prejudgment interest, plus liquidated damages, in amounts to be proved at trial, and all other affirmative relief necessary to eradicate the effects of its unlawful employment practices and conduct;

D)  Order Defendants to pay Plaintiff compensatory and punitive damages in an amount to be determined at the time of trial;

E)  Order Defendants to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by Plaintiff in this matter;

F)  Order CTG to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment with CTG, including but not limited to the two PIPs and related documents identified herein;

G)  Award such other legal and equitable relief, including front pay in an amount which will make Plaintiff whole, and an additional payment to offset the negative tax consequences of the award, to provide Plaintiff the make-whole relief mandated by the statutes, as the court deems just.

**A jury trial is demanded as to all issues triable to a jury.**

Respectfully submitted,

Filed: September 29, 2006

s/Christian Bagin
Christian Bagin
PA ID # 85511

WIENAND & BAGIN
312 Boulevard of the Allies
Suite 600
Pittsburgh, PA 15222-1923
(4l2)281-1110; FAX (412)281-8481
Christian@WienandandBagin.com

11